**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James WIEHOFF, Alan Thayer, Eric Luks, and D.W. Wakefield, Defendants-Appellants.**

Nos. 83–2823, 83–2824, 83–3144 and 83–3145.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1984.

Decided Nov. 9, 1984.

Rehearing Denied Feb. 11, 1985.

Steven A. Miller, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., Mark Alan Levine, Miami, Fla., Gerald J. Collins, Chicago, Ill., for defendants-appellants.

---

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Defendant-appellants appeal their convictions of wire fraud and inducing interstate travel pursuant to a fraudulent scheme, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2314 respectively. The primary issue on appeal is whether the district court should have dismissed the original indictment with prejudice because of a violation of the Speedy Trial Act, 18 U.S.C. § 3161 ("the Act"). Defendants also challenge evidentiary sufficiency and the court's response to the jury's inquiry regarding certain instructions. We affirm.

On June 30, 1982 a federal grand jury indicted seven individuals of wire fraud and inducing interstate travel pursuant to a fraud. Those seven included the four appellants in this consolidated case (Wiehoff, Thayer, Luks, and Wakefield) as well as one Bennett, the ringleader of the alleged scheme to defraud. Wakefield was arraigned on July 14, 1982; Wiehoff was arraigned on July 28, 1982; Thayer was arraigned on August 27, 1982; and Luks was arraigned on September 8, 1982. Bennett was never arraigned or tried because he was, and apparently still is, a fugitive from justice.

On October 13, 1982 Thayer filed a set of pretrial motions; those motions were decided on November 24. In the meantime, District Judge Flaum ordered on November 1 that the trial date would be continued to February 7, 1983 and that, for the "ends of justice," this intervening period would be excluded from the tabulation of the seventy-day period of delay allowed by the Act. On January 19, 1983 Judge Flaum ordered the trial date continued until May 2, 1983

and entered a similar "ends of justice" order excluding the resulting delay.

On May 5, 1983 the case was reassigned to Judge Shadur because of Judge Flaum's appointment to the United States Court of Appeals for the Seventh Circuit. On May 17 Judge Shadur ordered briefs concerning possible violations of the Act. Judge Shadur ruled that the Act had been violated, but dismissed the case without prejudice. The four defendant-appellants were reindicted on July 12, 1983; the trial commenced in a timely fashion on September 6, and all defendants were convicted.

We hold that Judge Shadur was not warranted in finding a violation of the Act. We therefore do not reach the issue of whether the indictment should have been dismissed with prejudice had there been a violation of the Act.

Although the Act requires that trial commence within seventy days of arraignment, time may be excluded from the computation of that period for a variety of reasons. It is undisputed here that if Judge Flaum's exclusions for the "ends of justice" were properly ordered, then the Act was not violated.[1] The Act provides that an ends-of-justice continuance will not be excludable "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). We disagree with Judge Shadur's conclusion that Judge Flaum failed to make the specific findings necessary to justify the exclusion.

In the November 1 and January 19 hearings, Judge Flaum determined that the trial would probably consume eight weeks and that Bennett, a key codefendant, was a fugitive from justice. In an interim status

---

**1.** We note that a reasonable period of delay required for the joinder of codefendants is excludable under 18 U.S.C. § 3161(h)(7). Therefore, the seventy-day statutory period did not begin to run until September 8, 1982, when Luks was arraigned. After thirty-three days had run, Thayer filed a set of pretrial motions on October 13. Delay resulting from pretrial mo-

tions is excludable. 18 U.S.C. § 3161(h)(1)(F). This exclusion is applicable to all the defendants joined in the action. *United States v. Stafford,* 697 F.2d 1368, 1372 (11th Cir.1983). Thus, when the first ends-of-justice exclusion was ordered on November 1, 1982, only thirty-three of the seventy permissible days had run.

hearing on November 24, Judge Flaum further determined that the United States had interviewed sixty-seven victims and that both the United States Attorney and the defendants needed time to comb through the documents of those interviews for potentially exculpatory evidence. Because the necessary findings need not be contemporaneous with the continuance order, *see United States v. Janik*, 723 F.2d 537, 544 (7th Cir.1983), we must read these three hearings as a whole in assessing the adequacy of the findings. Taken as a whole, the transcripts of these three hearings establish that Judge Flaum determined that the trial would be both long and complex, that more time for preparation was required, and that the key defendant was a fugitive from justice.

The need for further preparation in a complex case and the likelihood that failure to grant a continuance would render further proceedings "impossible" or result in a "miscarriage of justice" are two considerations that would justify an ends-of-justice continuance. 18 U.S.C. §§ 3161(h)(8)(B)(i), (ii). It was obvious from Judge Flaum's findings that he believed that (1) early trial in the absence of adequate preparation and without the key defendant present would result in a miscarriage of justice, and (2) the case was complex and that it was unreasonable to expect adequate preparation within the time limits established by the Act. Judge Flaum made detailed oral findings that would justify a continuance pursuant to 18 U.S.C. §§ 3161(h)(8)(B)(i), (ii). We refuse to hold that the Act required Judge Flaum to cite those sections or to track the statutory language in a lengthy legal opinion. His findings were sufficiently specific to justify a continuance.[2] *See United States v. Perez-Reveles*, 715 F.2d 1348, 1352 (9th Cir. 1983) (such findings need only be "reasonably explicit"); *cf. United States v. Guerrero*, 667 F.2d 862, 866–67. (10th Cir. 1981), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 490 (1982) (when facts have been presented to the court and the court has acted on them, it is not necessary to articulate those same facts in a continuance order). Because the parties do not dispute the timeliness of the second indictment and subsequent trial, we find defendants' convictions to have been obtained in accordance with the Act.[3]

Defendant Wakefield contests the sufficiency of the evidence and Judge Shadur's response to the jury's question regarding certain instructions. An appellate court may overturn a jury verdict only if "the record contains no evidence, regardless of how it is weighed, from which the

2. Although we have rejected defendants' challenge to the specificity of the district court's findings, defendants could, in the alternative, launch a substantive attack on the continuance order as an abuse of discretion. However, to obtain a reversal of a court's decision to exclude a delay in order to serve the "ends of justice," a defendant must show actual prejudice. *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir. 1984). "Prejudice" is caused by delays "intended to hamper defendant's ability to present his defense." *Id.* No such showing was made here with respect to the time elapsed after either the first or the second indictment.

3. Once the original indictment was dismissed, the speedy trial clock returned to zero. *See United States v. Samples*, 713 F.2d 298, 301–03 (7th Cir.1983) (interpreting 18 U.S.C. § 3161(d)(1)); *accord United States v. Bounos*, 730 F.2d 468, 470–71 (7th Cir.1984); *United States v. Thomas*, 705 F.2d 709, 710–11 (4th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 232, 78 L.Ed.2d 225 (1983); *United States v.*

*Abernathy*, 688 F.2d 576, 580–81 (8th Cir.1982); *United States v. Rodriguez-Restrepo*, 680 F.2d 920, 921 (2d Cir.1982); Frase, *The Speedy Trial Act of 1974*, 43 U.Chi.L.Rev. 667, 696 (1976) (time limits run anew when case dismissed on court's motion; but if dismissed with prejudice or on government's motion, time limits do not run anew). Therefore, the includable time elapsed after the first indictment is not added to the time elapsed after the second indictment. Of course, if we had reached the issue of whether dismissal with prejudice was necessary and had concluded that it was, then we would be constrained to reverse the convictions below and to quash the second indictment as improper. But since we find no violation of the Act with respect to the proceedings subsequent to the first indictment, we hold that Judge Shadur's erroneous dismissal of the indictment simply had the effect of turning the speedy trial clock back to zero. We therefore sustain the convictions entered pursuant to the second indictment.

jury could find guilt beyond a reasonable doubt." *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983) (quoting *Brandom v. United States*, 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed. 2634 (1971)), *cert. denied*, —— U.S. ——, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). Viewing the evidence and all reasonable inferences therefrom in a light most favorable to the government, *see id.,* we find substantial evidence from which the jury could conclude that Wakefield was a knowing and active participant in a scheme to defraud the investing public. The codefendants referred potential investors to Wakefield, who falsely represented that he had earned between $50,000 and $100,000 per year from the essentially worthless pizza distributorships sold by the codefendants. In fact, Wakefield paid nothing for his distributorship, neglected his business, and received payments totalling slightly over $20,000. From this, the jury could have reasonably found that Wakefield was a "shill" who was paid to increase sales by falsely posing as a typical successful distributor. There was also substantial evidence from which to infer that the fraudulent scheme caused interstate wire communications and interstate travel on the part of defrauded customers, thereby satisfying the jurisdictional element of the crimes charged. *See* 18 U.S.C. §§ 1343, 2314.

As for Wakefield's challenge to Judge Shadur's response to the jury's question regarding instructions, Judge Shadur did no more than restate jury instructions that have been approved by this court. The jury inquired whether the instruction requiring the government to prove that the defendant "knowingly" caused interstate wire communications in furtherance of the fraud was contradicted by another instruction charging the defendant with responsibility for foreseeable wire communications that followed "in the ordinary course of business." Judge Shadur correctly advised the jury that the latter instruction provided one means of satisfying the "knowingly" requirement expressed in the former instruction. In a similar context, this court has approved instructions allowing foreseeable acts of others that follow in the ordinary course of business to satisfy a requirement of knowing causation. *See United States v. Castor,* 558 F.2d 379, 385 (7th Cir.1977). Wakefield's objection to Judge Shadur's remarks is without merit.

Accordingly, the defendants' convictions are affirmed.