UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald R. THOMAS and Jerry L.
Troutman, Defendants-Appellants.

Nos. 84–1178, 84–1211 and 84–2603.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1985.

Decided Oct. 4, 1985.
Rehearing and Rehearing En Banc
Denied Oct. 31, 1985.

Rehearing and Rehearing En Banc
Denied Nov. 18, 1985 in
No. 84–1211.

John W. Cooley, Evanston, Ill., for defendants-appellants.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Codefendants Jerry Troutman and Donald R. Thomas bring this consolidated appeal from their convictions arising from an elaborate bank loan financing scheme. Troutman was convicted on two counts of wire fraud (in violation of 18 U.S.C. § 1343), a single count of using a fictitious name to perpetrate the scheme (18 U.S.C. § 1342) and one count of conspiracy to embezzle (18 U.S.C. § 371). Thomas was convicted on the conspiracy to embezzle count. Both defendants appeal their convictions for a number of reasons. We affirm the convictions.

Both defendants allege the admission of the testimony of a third codefendant, Steven Freel, after he had negotiated a plea agreement nine days into the sixteen-day trial, constituted reversible error.[1] The defendants claim error was committed here for three reasons. First, they argue Freel had participated in the pre-trial defense planning with them as a defendant and was therefore aware of privileged conversations and strategies. Second, they argue Freel's testimony violated Federal Rule of Evidence 615, the witness exclusion rule, because he had heard the other witnesses testify during the first nine days of the trial when he was still a defendant. Hence Freel could mold his testimony to stand consistent with other government witnesses. The third reason the defendants believe Freel's and the other codefendant's testimony is cause for reversal is more general: simply that the prejudicial impact upon the jury of testimony of a defendant-turned-government witness "cannot be overstated." (See Thomas brief p. 27.)

 Taking the last argument first, it is well-recognized that the testimony of codefendants after negotiating a mid-trial plea bargain is admissible in certain instances for limited purposes. This is true even if the testimony addresses the plea bargain itself. See *U.S. v. Bryza,* 522 F.2d 414, 425 (7th Cir.1975); *U.S. v. Romeros,* 600 F.2d 1104, 1105 (5th Cir.1979); *U.S. v. Halbert,* 640 F.2d 1000, 1004 (9th Cir.1981). Defendants fail to cite a significant line of case law that rules otherwise. At the appellate level, an examination of the lower court's cautionary instructions concerning the use of the testimony and the evidence of the guilty plea is the key to determining whether a constitutional violation occurred. This is because the testimony is admissible for limited purposes.

Defendants in the case *sub judice* never allege how the district judge's cautionary instruction was lacking. Instead the defendants resort to broad statements that the codefendants' testimony was somehow manifestly prejudicial. Yet no specifies as to how they were prejudiced from Freel's or the other codefendant's testimony is advanced. Only the event of Freel and the others testifying is advanced as grounds for reversal. This is insufficient according to the current legal criteria. The only recent legal authority relied upon by the defendants for support is *Bisaccia v. Attorney General of the State of New Jersey,* 623 F.2d 307 (3rd Cir.1980). The case is easily distinguishable. In *Bisaccia* the admission of a codefendant's guilty plea was considered reversible error because the trial judge failed to give any cautionary instructions to the jury about the use of the testimony. In the case *sub judice* the district court gave a cautionary instruction

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. Defendant Troutman also objects to the admission of the testimony of original codefendants McFarland, Clark, Nelson, and Butt. We will discuss defendant Thomas' argument as to the Freel testimony, which defendant Troutman adopts in his brief. We believe the reasoning set forth as to Freel will answer defendant Troutman's arguments regarding the other codefendants' testifying as well.

and defendants never argue how it was deficient. Hence *Bisaccia* cannot be used for reversal in our case.

Defendants also fail to specifically allege how they were prejudiced by Freel's participation in their pretrial strategy conferences with counsel. There is no evidence any confidences from these sessions were revealed by Freel on the witness stand or that his testimony was formulated with any pretrial strategies of the defendants taken into account. As for Freel's apparent violation of Federal Rule of Evidence 615, the witness exclusion rule, the case law surrounding Federal Rule of Evidence 615 reveals that absent any indication Freel's presence in the courtroom was the product of government connivance (or in some way a willful violation of the rule) it is within the district court's sound discretion to allow the witness to testify. See *U.S. v. Schaefer*, 299 F.2d 625, 360–31 (7th Cir. 1962); *Hollstein v. Grier*, 262 S.W.2d 954 (1953). We see no abuse of discretion by the district court here. There is no evidence of a willful or strategic violation of Federal Rule of Evidence 615 by the prosecution or Freel. Nor is there evidence Freel's presence throughout the trial prejudiced the defendants. We note Freel's testimony appears limited to one of many financial transactions surrounding the case which were already documented. We find no reason for reversal.

Defendant Thomas argues his speedy trial rights were violated, requiring reversal. (Defendant Troutman adopts this argument in a footnote in his brief, but has nothing to add to Thomas' argument.) The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, requires a defendant be tried within seventy days from either the date the information or indictment was filed, or from the date upon which the defendant appeared before a judicial officer of the court in which the charge is pending, whichever date occurs last. In this case Thomas' arraignment on August 8, 1983 triggered the speedy trial clock. On September 12, thirty-five days later, a codefendant named Stoller filed a motion for a continuance. The court granted the continuance and saw fit to set a trial date for November 10, well beyond the seventy-day speedy trial deadline.

The court's main reason for granting the continuance far beyond the seventy-day speedy trial time table was that the case was complex. In a written order explaining its actions, the district court observed the case involved six defendants and thousands of financial documents which had been secured through discovery. The district court concluded the defendants' request for more time to prepare a defense was reasonable.

■ Such a decision is well within the sound discretion of the district court.

"The need for further preparation in a complex case and the likelihood that failure to grant a continuance would ... result in a 'miscarriage of justice' ... would justify an ends-of-justice continuance. 18 U.S.C. §§ 3161(h)(8)(B)(i), (ii) ..." *U.S. v. Weihoff*, 748 F.2d 1158, 1159 (7th Cir.1984).

We believe the written order of the district court sufficiently articulated legitimate reasons for granting the continuance and was well within the necessary guidelines found at 18 U.S.C. § 3161(h)(8)(A) and (B). We see no abuse of discretion here.

Thomas' reliance on *U.S. v. Perez-Reveles*, 715 F.2d 1348 (9th Cir.1983) is misguided. In *Perez-Reveles* the Circuit Court reversed the district court because the lower court's rulings did not include explicit findings required by the Speedy Trial Act as to why the continuance was granted. The district court even failed to characterize the continuance as an "interest of justice continuance." The court labeled the case complex, yet gave no reason why it was. In the case *sub judice* the district court stated in a written order that the case was complex because it contained numerous defendants and thousands of financial documents. The court also explicitly mentioned it was granting an "ends of justice" continuance. Such an explanation, contained in a written order, sufficiently separates the case at bar from *Perez-Reveles*. A final case advanced by Thomas,

*U.S. v. Carrasquillo,* 667 F.2d 382 (3rd Cir.1981) is also distinguishable. In that case no formal continuance was ever granted by the district court. Instead, the trial date was set beyond the speedy trial time limit by a deputy clerk at the request of defendant's attorney. Hence, judging whether the reason for the continuance in the case at bar was legally sufficient cannot be deduced by referring to *Carrasquillo.*

Thomas claims he did not have notice his codefendants were moving for a continuance and had no input into the motions. Yet Thomas was sent a court order of the granting of the continuance. Approximately one week later he appeared before the court and failed to assert any claim the continuance violated his speedy trial rights. Two weeks after that, he moved to dismiss his case by arguing the speedy trial act violation. Such conduct leaves Thomas' argument unpersuasive.

■ Defendant Thomas' final argument is that there was insufficient evidence for the jury to convict him of the crime of conspiracy beyond a reasonable doubt. We find no compelling reason to reverse the findings of the jury here. In *U.S. v. Wiehoff,* supra, we noted:

> An appellate court may overturn a jury verdict only if "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983) (quoting *Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir. 1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed. 2634 (1971)), *cert. denied,* — U.S. ——, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984).

We do not find the evidence in this case so unconvincing. The facts of this case reveal there were numerous large transfers of money through the Farmers State Bank in Lewistown, Illinois. Thomas was the President of the bank. He had continuous dealings with defendant Troutman and provided Troutman with large unsecured loans. He also approved transfers of money to

Troutman at key times, and often to the Troutman-controlled Sherwood Forrest account.

In *U.S. v. Alexander,* 743 F.2d 472 at 475 (7th Cir.1984), we stated:

> The standard of review of claims of insufficient evidence is the traditional reasonable doubt test. That is, we must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). [Citations omitted.]

We believe a rational trier of fact could have found beyond a reasonable doubt that defendant Thomas was involved in the conspiracy. We find no reason to reverse the jury's verdict. We AFFIRM the Thomas conviction.

■ Defendant Troutman raises a multitude of alleged errors, all of which he claims constitute grounds for reversal. The first series of arguments advanced consist of allegations of prosecutorial misconduct. Troutman's first argument has already been rejected—the use of codefendant Freel's testimony. In his second argument Troutman claims the government created reversible error by misleading and confusing the jury when arguing in its closing the correct standard for reasonable doubt. The argument is without merit. It must be remembered pursuant to Seventh Circuit law the trial court did not offer a definition of reasonable doubt. "We have repeatedly admonished district courts not to define 'reasonable doubt' ... because often the definition engenders more confusion than does the term itself." *U.S. v. Martin-Trigona,* 684 F.2d 485, 493 (7th Cir. 1982); see also, *U.S. v. Allen,* 596 F.2d 227, 230 (7th Cir.1979). Therefore, in the case *sub judice* what happened was counsel for both the government and codefendant Stoller advanced their own analyses of the reasonable doubt standard. Yet importantly defense counsel actually opened the dis-

cussion of reasonable doubt in its closing argument. The government only countered in rebuttal by using its own analogies. Unfortunately for Troutman, the law states that once defense counsel spoke on the matter, the government was allowed to rebut.

> "... [I]t is equally well settled law where the defense counsel makes remarks in closing that invite the Government to respond, the prosecutor may, in rebuttal, enter into areas which would otherwise constitute improper argument." *U.S. v. Reagan*, 694 F.2d 1075, 1080 (7th Cir.1982).

The above quote appears to describe exactly what happened in the case at bar. Further, it appears Troutman's attorney failed to object to either side's arguing of the reasonable doubt standard at trial. There is no sufficient evidence the government was deliberately trying to mislead the jury. We find nothing the government said demonstrably prejudicial. Therefore, this argument must fail.

■ During its closing argument the government queried that if Troutman allegedly had extensive business relationships with two people, Robert Marco and Gus Fields, who the government claims were names of nonexistent people, why didn't Troutman produce these individuals? Troutman claims this is a direct reference on his election not to testify. This argument is ridiculous. As the government correctly points out, any evidence of Fields' or Marco's existence could have been presented without Troutman testifying. We do not draw the inference, as Troutman does, that he should have taken the stand to explain where these people were.

■ Troutman argues the prosecution deliberately saved its closing argument concerning the two wire fraud counts until its rebuttal argument, denying him an opportunity to respond. It is true that the prosecution's addressing new arguments on rebuttal is undesirable. However, the issue then becomes whether this was prejudicial or harmless error. We believe it was the latter. Troutman fails to elaborate upon how he was prejudiced by the prosecution's conduct here. The government simply read the jury instructions and charging counts and pointed to exhibits that it believed would prove the wire fraud. Because Troutman claims there never was any wire fraud, the jury's task was merely to determine if the documentation was sufficient to prove guilt. Troutman fails to explain how he was prejudiced by the government's pointing to the documents and reciting the figures. We believe in this instance the prosecution's rebuttal was hardly so elaborate and hard-hitting to constitute reversible error.

Troutman also contends the prosecutor employed inflammatory remarks in his closing argument. The remarks referred to are as follows:

> Ladies and gentlemen, if you believe these are legitimate loans, I think we better call time out here and rush down, all of us go down to our banks and take the money out and run home with it and put it in our mattresses. Because every dishonest banker in the country like Don Thomas, if he decides he needs a little money, decides he wants to go to Las Vegas—

A second comment Troutman objects to is:

> I guess it just goes to prove that there really is no honor among thieves.

■ While such comments deserve the warning they got from the trial judge, we do not believe they created reversible error. After all, the government charged Troutman on various fraud and embezzlement counts. The fact that the government considered the defendants thieves could hardly have been news to the jury. The fact that the government referred to defendants as dishonest could hardly have been so persuasive and prejudicial after a long trial that it constitutes reason for reversal. The bottom line here is we believe the evidence—and not the comments—caused the jury to convict the defendants in this case.

■ Troutman advances several arguments regarding his conspiracy conviction. His first argument is his conspiracy count

charged him with committing two offenses and was therefore duplicitous.[2] This argument was rejected in *Braverman v. U.S.*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942):

> The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for "The conspiracy is the crime, and that is one, however diverse its objects". *Frohwerk v. United States*, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 [(1919)]. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor "arises under" the statute whose violation is its object. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute ... of the Criminal Code. For such a violation only the single penalty prescribed by the statute can be imposed. *Id.* at 54, 63 S.Ct. at 102. [Citations omitted.]

The Seventh Circuit recently reaffirmed this principle:

> "A single conspiracy to commit different drug offenses is a single criminal offense, *Braerman [sic] v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); since a defendant cannot be sentenced twice for the same offense, charging defendant in two counts for what were different objectives of the same conspiracy would have been improper." *U.S. v. Muelbl*, 739 F.2d 1175, 1182 (1984); citing *U.S. v. Kramer*, 711 F.2d 789, 797 (7th Cir.1983).

In sum, for the future this argument should be abandoned.

■ Troutman also claims the jury instruction relating to the conspiracy count was confusing and incomplete because the instruction did not define the mental states connected with the substantive offenses until the end. Yet Troutman never objected to the instruction or offered his own at trial. Very recently in *U.S. v. Schultz*, 769 F.2d 431, 432, (7th Cir.1985), we reaffirmed the following principle:

> "... because his trial counsel failed to preserve the objection below, we can reverse his conviction only if we find that the trial court committed 'plain error' by failing to instruct the jury on aiding and abetting. *See, e.g., United States v. Torres*, 733 F.2d 449, 458 (7th Cir.), *cert. denied* [—— U.S. ——], 105 S.Ct. 204 [83 L.Ed.2d 135] (1984); Fed.R.Crim.P. 52(b). In addressing whether such egregious error occurred, 'we must examine the entire record before us, and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'" *United States v. Torres*, 733 F.2d at 458 (quoting *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.), *cert. denied*, 437 U.S. 907 [98 S.Ct. 3096, 57 L.Ed.2d 1137] (1978)). *Id.* at p. 432.

The jury instruction here was compatible with Seventh Circuit Instruction No. 5.11. We cannot conclude any mistake, if made at all, "had a probable impact on the jury's finding that the defendant was guilty." See *Schultz, supra.*

■ Troutman believes the evidence was not sufficient to allow a jury to find him guilty beyond a reasonable doubt on the conspiracy, mail fraud and wire fraud counts. We have already discussed the appellate standard of review employed when asked to overturn a jury verdict. See *Wiehoff* and *Alexander*, supra. We find no reason to overturn the verdicts. Concerning the conspiracy conviction, Troutman controlled commodity accounts in other person's names. He signed notes with phantom names. Several coconspirators testified financial statements were fraudulently created to justify large loans to accounts that Troutman had more than a

---

**2.** The two offenses were embezzlement under 18 U.S.C. § 656 and knowingly making false state-

ments in violation of 18 U.S.C. § 1014.

passing interest in. In many respects a jury could find Troutman was the linchpin and that both he and Thomas fraudulently orchestrated money acquisitions and transfers to accounts for reasons other than stated publicly. As for the mail fraud conviction, a jury could have found Troutman used the phantom name of Marco as cover in receiving important mail, such as monthly bank and commodity statements, to perpetuate the banking scheme. Concerning the wire fraud conviction, the jury could have found any money transferred from the Troutman/Sherwood Forrest account was not only fraudulently obtained but also fraudulently transferred. In sum, defendant has failed to meet the stiff legal standard necessary for us to reverse his convictions.

Troutman's final argument is that the sentence he received was illegal. This is because the court imposed a five-year sentence and $10,000 fine and ordered defendant to stand committed until the fine is paid. There is nothing illegal about such a sentence. In fact it is expressly authorized under 18 U.S.C. § 3565(a)(1). Such a sentence is often employed in criminal tax cases. See *U.S. v. Green,* 735 F.2d 1203 (9th Cir.1984); *U.S. v. Merritt,* 639 F.2d 254 (5th Cir.1981). However, such sentences are not limited to criminal tax cases and may be imposed if a defendant is found able to pay the fine.

The sentence also placed Troutman on probation on Counts Four and Five "to commence upon the completion of parole," (parole presumably from the counts which put him under confinement—numbers One and Three). However, Troutman argues since the parole language is found in the paragraph addressing Counts Four and Five, and since there was no confinement associated with Counts Four and Five, he cannot be paroled on these counts (as it reads in that paragraph of the order). Therefore, he believes the sentences on all four counts should be vacated. The court either made a clerical error here or is just guilty of creating ambiguous verbiage. We assume the order should have read that

he be placed on probation on Counts Four and Five "upon the completion of the sentence imposed on Counts One and Three," which may begin on completion of parole on Counts One and Three. However, we need not engage in such speculation here. Rule 36 of the Federal Rules of Criminal Procedure states the following:

> Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

We see no reversible error here. The answer is for the order to be corrected, not vacated.

The judgments as to both defendants Troutman and Thomas are hereby AFFIRMED, but the cause is remanded solely for the correction of the clerical error in the sentence.