**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ralph TAYLOR, Defendant–Appellant.**

No. 98–2767.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1999.

Decided Nov. 16, 1999.

Susan H. Dowd (argued), Office of the United States Attorney, Indianapolis, IN, for plaintiff-appellee.

Sarah L. Nagy (argued), Indianapolis, IN, for defendant-appellant.

Before POSNER, Chief Judge, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Sixty-six year-old Ralph Taylor supplemented his pension checks with the income from the sale of cocaine between 1986 and 1994. A jury found him guilty of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); five counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); six counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(A)(i); and one count of engaging in an unlawful monetary transaction, in violation of 18 U.S.C. § 1957. Taylor was sentenced to 30 years' imprisonment, 10 years' supervised release, and a fine of $25,000. On appeal, Taylor challenges the district court's denial of his motion to suppress, as well as the district court's denial of his motion to dismiss. We affirm.

## I. BACKGROUND

In 1986, Taylor and his partner, Archie Wells, began distributing cocaine in Indianapolis, Indiana. For approximately the next six years, the two men sold between one and two kilograms of cocaine a week. In 1992, Taylor left Indiana for Las Vegas, Nevada, but continued his business relationship with Wells; Wells either traveling to Las Vegas to pick up the cocaine or Taylor transporting the drugs to Indianapolis.[1]

Joe Montgomery (Taylor's and Wells' drug supplier in Indiana) was arrested in Chicago while in possession of 50 kilograms of cocaine, and Wells was arrested in Indianapolis while in possession of four kilograms of cocaine. After their arrest, both men were charged with federal drug charges, pled guilty, and cooperated with authorities in their investigation of Taylor—resulting in Taylor's indictment on October 1, 1996.

In executing an arrest warrant for Taylor at his home on October 7, 1996, several federal agents approached Taylor's house

---

1. Taylor and Wells used several methods to launder the funds from their drug sales, including Taylor giving $25,000 of his cocaine proceeds to his lawyer, John Brooks, who in turn obtained a money order for Taylor.

in Las Vegas with their weapons drawn and knocked on the front door. A woman answered the door, and the officers asked to speak with Taylor. Shortly thereafter, Taylor appeared at the door. The agents placed Taylor under arrest, handcuffed him, and read him his *Miranda* warnings.

Special DEA Agent Michael Cates requested Taylor's permission to search his house, read Taylor the consent form, and asked whether he would sign it. Agent Cates stated that Taylor agreed to the search, was uncuffed, looked over the consent form for about 15 to 30 seconds, and then signed it.[2] It is interesting to note that at this time Taylor never told any agent at the scene that he had a hearing problem and was unable to hear what Cates was saying.[3]

### A. Attorney Brooks

Taylor initially hired Brooks as his attorney, but because one of the money laundering counts involved the $25,000 money order Brooks procured for Taylor, Brooks withdrew because of a conflict of interest. On November 14, 1996, one day before his motion to withdraw was granted, Brooks filed a motion for continuance in order that Taylor's newly appointed counsel have time to prepare for trial.[4]

### B. Attorney Riggs

On November 27, 1996, when Taylor appeared before a magistrate judge, he was found to be indigent and without funds to hire a lawyer. The court appointed Steven Riggs to represent him but Riggs was permitted to withdraw on December 19, 1996, after making it known to the court that he had a conflict of interest.

### C. Attorney Inman

On December 10, 1996, the judge appointed Mark Inman to represent Taylor.[5] On January 10, 1997, Inman filed a motion for continuance of the trial date to allow for time to review the 3,000 pages of discovery materials.[6] Inman filed a second motion for continuance on February 28, 1997, citing the need to review discovery.[7]

In March 1997, while Inman was dutifully preparing for trial, Taylor, on his own, requested a status conference with the trial judge concerning his counsel. The district court conducted an ex parte conference with Taylor and Inman, at which Taylor indicated that he desired to keep Inman as counsel. But, on April 22, 1997, Taylor wrote the court complaining that Inman lacked sufficient time to devote to his case and had refused to order transcripts of prior proceedings that Taylor thought important. Two days later, on April 24, 1997, Inman filed a motion to withdraw, citing a breakdown in communication with Taylor, along with a motion for

---

**2.** The subsequent search of the house uncovered the following items that were entered into evidence at Taylor's trial: an airline reservation slip from a travel agency for a round trip between Las Vegas and Indianapolis, an Internal Revenue Service Form 1099R showing distributions from Taylor's pension, a deed in Taylor's name, an address book with entries for his co-conspirators, a money counter, two guns and ammunition.

**3.** As discussed later in the opinion, the first time Taylor claimed to have a hearing problem was in a letter sent to the court after his first motion to suppress was denied.

**4.** The judge granted the motion and reset the trial for February 25, 1997, but failed to explicitly state that he would exclude this period of delay from the speedy trial calculation.

**5.** For some reason, unreflected in the record, Inman was appointed to represent Taylor before Riggs was allowed to withdraw.

**6.** The district court granted the motion and continued the trial to April 7, 1997, explicitly excluding the time from Speedy Trial Act computation under the "ends of justice" exception without articulating the necessary findings required under the Act. *See* 18 U.S.C. § 3161(h)(8)(B)(iv).

**7.** The judge also granted this motion and reset the trial date for May 27, 1997. This order also explicitly excluded the extra time from the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv) but again without articulating any explicit findings.

a continuance.[8]

## D. Attorneys Rader and Schrager

The Court appointed a fourth lawyer, Carolyn Rader, on May 2, 1997.[9] Shortly thereafter, Rader filed a motion for continuance, citing the voluminous discovery as well as numerous trial calendar conflicts.[10] Despite Rader's attempts to prepare for trial, Taylor once again sent letters to the court (in July and August 1997) complaining that Rader had failed to file certain motions or obtain the very same transcripts Taylor had demanded previously through Inman. In October, Taylor again requested new counsel but, on this occasion, the trial judge refused to appoint another attorney and found that Rader's representation had been "effective and adequate to this point." The court directed Rader to continue as Taylor's counsel, and found further that Taylor's request was a "continuation of [his] strategy to delay this prosecution." But Taylor continued to disagree with Rader's handling of his case, and on October 24, 1997, at Rader's request, the court held another ex parte hearing. During the hearing, Taylor insisted that Rader withdraw, and the judge allowed her to do so. The same day, the court appointed a fifth attorney for Taylor, Edward Schrager, and continued the trial to March 23, 1998, excluding the time from the Speedy Trial Act computation without citing a statutory section.

8. The judge granted both motions, and continued the trial until September 8, 1997, again expressly excluding the time from the Speedy Trial Act computation under 18 U.S.C. § 3161(h)(8)(B)(iv) but again failing to articulate on the record the necessary findings.

9. Shortly after Rader's appointment, the grand jury returned a fourteen-count superseding indictment against Taylor. Whereas the original indictment only accused Taylor of dealing drugs between 1993 and his arrest, count one of the superseding indictment charged that, beginning as early as 1988, Taylor had been involved in a conspiracy to dis-

## E. Speedy Trial

In one of Taylor's letters complaining about Rader's performance, he also asserted that his statutory and Sixth Amendment speedy trial rights had been violated. In August 1997, the government filed a speedy trial computation with the court, asserting that only ten nonexcludable days had elapsed for Speedy Trial Act purposes. In November 1997, after Schrager's appointment, the district court construed Taylor's letter as a motion to dismiss and set a briefing schedule for the Speedy Trial Act challenge. On January 20, 1998, the trial court denied Taylor's motion to dismiss and entered *nunc pro tunc* orders setting forth reasons why the ends of justice served by granting the various continuances outweighed the defendant's, as well as the public's, interest in a speedy trial. The net effect of the *nunc pro tunc* orders was to reduce the time under the Speedy Trial Act to the ten days computed by the government. Schrager sought one final continuance in March 1998 in order that he might have additional time to prepare for trial. The court acquiesced and continued the trial to March 30, 1998, and excluded the extra time from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(8), this time finding that the ends of justice served by the continuance outweighed the defendant's and public's interest in a speedy trial.

## F. Motion to Suppress

On February 10, 1998, Taylor filed a motion to suppress the evidence found in tribute cocaine that eventually included Wells, Montgomery and Locke, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The superseding indictment also included a new count fourteen, charging Taylor with engaging in a monetary transaction involving criminally derived funds in violation of 18 U.S.C. § 1957. Taylor pled not guilty to the superseding indictment.

10. The court granted the motion and set a new trial date for November 17, 1997, and, once more without articulating its findings, excluded the time from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(8).

his home. Taylor contended that the arresting agents had coerced his consent to search through the use of "general intimidation," but the district court denied the motion without a hearing, ruling that Taylor had failed to allege specific facts demonstrating that the arresting agents acted illegally. But on March 23, 1998, despite that fact that Taylor had been in court on numerous occasions for different proceedings in this case (he had five different lawyers) and had never before complained about a hearing loss or having difficulty understanding what was said, Taylor wrote another letter to the district court and stated that he had a hearing problem and thus could not hear what Special Agent Cates said when he read the consent form to him. The following day, March 24, 1998, the judge held an evidentiary hearing to ascertain the extent of Taylor's alleged hearing problem. At the hearing, the trial judge took testimony concerning the arrest from Taylor and Special Agent Cates. The judge, without using his microphone, questioned Taylor about his alleged hearing impairment and noted for the record that Taylor appeared to have no trouble hearing and understanding their conversation at a normal volume in the courtroom. Nevertheless, to cast aside any doubt, the court ordered a formal examination of Taylor's alleged hearing deficiency.[11] The trial judge concluded that the examination established that Taylor had a hearing loss in his left ear only and that Taylor's hearing deficit was not to a degree that it would have interfered with his ability to hear Special Agent Cates' questions on the date of his arrest.

Taylor's trial began on March 30, 1998. After four days of trial, the jury found him guilty of all fourteen counts contained in the superseding indictment. Taylor was sentenced to 30 years' imprisonment, 10 years' supervised release, a $25,000 fine, and special assessments totaling $700. Taylor filed a timely notice of appeal.

## II. ISSUES

Taylor argues that 1) the district court erred in denying his motion to suppress the evidence discovered by federal agents when they searched his Las Vegas home because he was under duress when he signed the consent form and his hearing impairment precluded him from understanding what was said to him at the time the form was read to him; and 2) the judge should have dismissed the charges against him because the delay in bringing him to trial violated both the Speedy Trial Act and the Sixth Amendment right to a speedy trial.

## III. ANALYSIS[12]

### A. Motion to Suppress

■ Taylor argues that the district court should have suppressed the evidence found in his Las Vegas residence because his consent to the search was neither knowingly nor voluntarily given because of 1) his hearing problem; and 2) the alleged fact that he signed the consent form while under duress due to: a) the fact he was handcuffed; and b) the agents use of "general intimidation" techniques, in that they displayed their drawn weapons. When reviewing the denial of a motion to suppress,

11. The results of the examination itself are not contained in the record.

12. As a preliminary matter, we note that the defendant's brief violates Circuit Rule 30(b)(1), which requires an appellant to include in his appendix "[c]opies of any ... opinions, orders, or oral rulings in the case that address the issues sought to be raised." The defendant appeals from the denial of his motion to suppress and his motion to dismiss on speedy trial grounds. Thus, we point out that it was defense counsel's duty to have

included in the appendix the district court's orders of January 20, 1998 (denying the defendant's motion to dismiss on speedy trial grounds), March 10, 1998 (denying defendant's motion to suppress), and March 27, 1998 (denying defendant's renewed motion to suppress). But none of these items was attached. Thus, counsel's certification that all items required by Rule 30(a) and (b) were included in the appendix was less than accurate. See Cir. R. 30(d).

we review the district court's conclusions of law de novo, and we review the court's findings of fact for clear error. *See United States v. Griffin*, 150 F.3d 778, 782–83 (7th Cir.1998). Whether a defendant's consent to a search was voluntarily given "is a question of fact to be determined from all the circumstances," *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041 (1973)), "whose resolution by the trier of fact is subject to deferential appellate review," *United States v. Chan*, 136 F.3d 1158, 1159 (7th Cir.1998). *See also United States v. Schwensow*, 151 F.3d 650, 660 (7th Cir.1998) (review of voluntariness of consent is for clear error); *United States v. Thompson*, 106 F.3d 794, 797 (7th Cir. 1997) (same).

■■■ A consent to search is valid when it is given "freely and voluntarily" and with knowledge. In determining whether consent is voluntary, we must consider the "age, education, and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody." *United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir.1994).

■■ Special Agent Cates testified that he arrested Taylor on October 7, 1996, and immediately thereafter read Taylor his *Miranda* rights, and explained the reason for his arrest. Cates took Taylor inside the residence, asked Taylor for permission to search his house, read Taylor the consent form, and asked him to sign it. Taylor then agreed to allow the agents to search his home and the officers removed his cuffs. After looking over the consent form for 15–30 seconds, Taylor signed it.

At the suppression hearing, Taylor admitted that he was never threatened by Cates and had never told any of the officers that he had a hearing problem. Additionally, Taylor testified that in other proceedings in this case he had never had any trouble hearing what was said. Furthermore, Taylor admitted that he could hear everything at the suppression hearing. Finally, the court ordered hearing examination revealed that Taylor had a hearing loss in his left ear, but that his hearing deficit was not so significant that it would have interfered with his ability to hear normal conversations. Considering these facts and the district court's findings, we refuse to hold that the judge committed error when denying Taylor's motion to suppress. *See LaGrone*, 43 F.3d at 333–34; *United States v. Taylor*, 31 F.3d 459, 463–64 (7th Cir.1994); *United States v. Kozinski*, 16 F.3d 795, 810 (7th Cir.1994).

## B. Speedy Trial Issues

### 1. Speedy Trial Act

■■ Taylor claims that the district court erred in not dismissing the indictment against him for violation of the Speedy Trial Act.

The Speedy Trial Act generally requires that trials in criminal cases commence within 70 days of the filing date of the information or indictment, or from the date of initial appearance, whichever last occurs. 18 U.S.C. § 3161(c)(1). However, the Act provides that several periods of time may be excluded from this 70-day period. 18 U.S.C. § 3161(h). Among the permitted exclusions is delay "resulting from a continuance granted ... on the basis of ... findings that the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

*United States v. Vega*, 860 F.2d 779, 786 (7th Cir.1988). As we have explained, "[t]he decision to grant a continuance under the Speedy Trial Act, and [the] accompanying decision to exclude the delay under [§ 3161](h)(8)(A) is addressed to the sound discretion of the trial court." *United States v. Blandina*, 895 F.2d 293, 296 (7th Cir.1989) (internal quotation marks and citation omitted). As we have repeatedly stated: "[a]bsent legal error, ex-

clusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Marin*, 7 F.3d 679, 683 (7th Cir.1993) (quoting *United States v. Scott*, 784 F.2d 787, 789 (7th Cir.1986)); *see also United States v. Ruth*, 65 F.3d 599, 605 (7th Cir.1995).

Taylor argues that because his trial did not start for 560 days after his initial appearance in the Southern District of Indiana, the judge should have dismissed the charges. The trial court excluded 550 of those days under either § 3161(h)(1)(F), which allows for the exclusion of time while pretrial motions are pending, or § 3161(h)(8), which allows for the exclusion of time resulting from the granting of a continuance that the district court finds meets the "ends of justice." Thus, the district court concluded that, for purposes of the Speedy Trial Act, only 10 nonexcludable days had elapsed before trial.

■ On appeal, Taylor argues that the trial judge's calculations are erroneous, and that in fact 107 nonexcludable days transpired before his trial commenced. The defendant-appellant Taylor contends that the court erred by not stating its reasons for granting continuances contemporaneously with its continuance orders.[13] But we have long held that the judge need not contemporaneously state the reasons for granting a continuance. *See United States v. Jean*, 25 F.3d 588, 595 (7th Cir. 1994) ("the necessary findings [under § 3161(h)(8)(A)] need not be contemporaneous with the continuance order," quoting *United States v. Wiehoff*, 748 F.2d 1158, 1160 (7th Cir.1984)); *United States v. Janik*, 723 F.2d 537, 544 (7th Cir.1983).

■ Furthermore, the numerous continuances requested by defense counsel were valid and proper, and were filed either because the defendant requested substitute counsel; more time was needed to adequately prepare Taylor's defense, which involved over 3,000 pages of discovery provided by the government; or counsel was permitted to withdraw because of a conflict. *See United States v. Moutry*, 46 F.3d 598, 601 (7th Cir.1995) (continuance to allow defense counsel adequate time to prepare for trial). While Taylor asserts that the continuances granted to attorneys Inman and Rader should not have been granted because they were in part motivated by those attorneys' busy schedules, the record establishes otherwise. The trial judge found that Inman and Rader's representation of Taylor was competent, and further that Taylor's complaints about his attorneys were motivated by Taylor's "strategy to delay" his prosecution. After review, we conclude that Taylor has failed to demonstrate a violation of the Speedy Trial Act.

### 2. Sixth Amendment

■ Taylor next argues that the long postindictment delay violated his Sixth Amendment right to a speedy trial. Four factors govern the constitutional speedy trial analysis: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).[14] The second factor, whether the 560-day delay was the fault of the govern-

---

**13.** The Act requires the district court, when relying on the "ends of justice" exception, to "[set] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

**14.** The government concedes that the 560-day delay is long enough to satisfy the first factor, length of delay. *See Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (noting that courts generally consider delays of approximately one year sufficient to justify further analysis of Sixth Amendment speedy trial claims).

ment or the defendant, weighs against Taylor because the frequent delays were not caused by any action on the part of the government but rather were attributable to Taylor's attempts to manipulate the system and his pattern of fighting with defense counsel, which the trial judge characterized as a "strategy of delay."[15] As for the third factor, whether the defendant asserted his right to a speedy trial, Taylor raised his constitutional speedy trial claim for the first time in a handwritten motion filed in July 1997, but in that same motion he demanded the appointment of a new lawyer in what the trial judge found to be another delaying tactic. Thus, Taylor's "demand" for a speedy trial was inconsistent with his own efforts to delay the proceedings and is entitled to little, if any, weight.

Finally, as to the fourth factor, prejudice from the delay, Taylor claims prejudice arguing that the delay allowed the government to file a superseding indictment. In spite of the fact that the last two court-appointed attorneys where the result of Taylor's motions for new counsel, he claims that he was also prejudiced because the delay necessitated five different defense lawyers.

 As to Taylor's first argument, the delay allowed the government to file more charges, we have repeatedly stated that the fact that the government increased the number of crimes a defendant is charged with does not give rise to prejudice. *See, e.g., United States v. Salerno*, 108 F.3d 730, 738 (7th Cir.1997); *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir. 1984). As for Taylor's second reason, the delay necessitated the appointment of five separate defense lawyers, Taylor fails to provide this court with any reason why having multiple lawyers prejudiced his defense. In fact, as the trial judge concluded, the attorneys representing Taylor were "effective and adequate" and Taylor's requests for new counsel were part of "a

strategy to delay [his] prosecution." Because Taylor was responsible for the vast majority of delayed trial dates and was not actually prejudiced, Taylor's Sixth Amendment right to a speedy trial was not violated.

Accordingly, the judgment of the district court is

AFFIRMED.

---

**15.** We note that every time Taylor received substitute counsel, they required additional time to prepare for trial in order that they might properly represent Taylor.