**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Robert A. MURRAY,
Defendant-Appellee.**

No. 83–1155.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Filed June 17, 1985.

Decided Sept. 19, 1985.

Donald B. Ayer, Sacramento, Cal., for plaintiff-appellant.

Julian G. Macias, Sacramento, Cal., for defendant-appellee.

Before DUNIWAY and PREGERSON, Circuit Judges, and KELLEHER,* District Judge.

PER CURIAM:

The United States of America appeals an order of the United States District Court for the Eastern District of California, Edward Dean Price, Judge, dismissing with prejudice one count charging violation of 18 U.S.C., App. § 1202(a)(1), one count charging violation of 18 U.S.C. § 922(a)(6), and one count charging violation of 18 U.S.C. § 922(h)(1) contained in an indictment returned against defendant Robert A. Murray (Counts III, XV, and XVI, respectively).

On June 3, 1982, the Grand Jury in Fresno County returned a true bill of indictment against Murray and one Kenneth Kliever. The nineteen count indictment against Murray and Kliever charged Murray with two violations of 18 U.S.C. § 922(a)(6), false statements in the acquisition of a firearm, seven violations of 18 U.S.C. § 922(h)(1), receipt of a firearm by a convicted felon, three violations of 18 U.S.C. § 922(h)(1), receipt of ammunition by a convicted felon, and five violations of 18 U.S.C., App. § 1202(a)(1), possession of a firearm by a convicted felon.

On appeal, the government contends that: (1) Judge Price, the trial judge, should not have conducted a *de novo* factual review of the prior order of the duty

---

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

judge, extending the Speedy Trial Act's thirty day indictment period; (2) the record does not justify a dismissal of any of the counts from the Murray indictment; and (3) any dismissal, if proper, should have been without prejudice.

We reverse the order of dismissal of Counts III, XV, and XVI.

## FACTS

On March 4, 1982 a warrant was authorized for the search of the residence of Robert A. Murray in Squaw Valley, Fresno County, California. On March 10, 1982 United States Marshals arrested Murray on a criminal complaint which charged him with possession of a firearm by a convicted felon, making false statements in the acquisition of a firearm, and receipt of a firearm by a convicted felon.

On April 6, 1982 Assistant United States Attorney Phillip Cronin appeared before United States District Judge M.D. Crocker, the duty judge, and requested a sixty day extension of time in which to file an indictment against Murray. AUSA Cronin contended that an investigation of the matter had not yet been completed. A search of the home of Susan Watson, Murray's daughter, retrieved twenty-four firearms. Investigators were attempting to trace the source of these weapons, believing that Murray had purchased the firearms through a manufacturer in New York. Further, AUSA Cronin alleged that the ongoing investigation would develop leads as to the possibility of straw transactions that involved the purchase of a thousand rounds of ammunition; nine hundred and fifty rounds were uncovered at the Murray residence on March 10. Finally, AUSA Cronin revealed that a number of fingerprints and handwriting samples were being processed by the Federal Bureau of Investigation in Washington, D.C. In sum, the government orally moved for a sixty day continuance from the date of Murray's arrest.

At the April 6 hearing, Judge Crocker granted the requested extension. On April 12, 1982 he signed an order (*nunc pro tunc* as of April 9, 1982) extending to June 8, 1982 the time in which the government could file an indictment against Murray. The order found that the complexity of the case against Murray, the ongoing nature of the investigation, and the potential multiplicity of defendants supported the extension of time.

On June 3, 1982 the Grand Jury in Fresno returned an indictment against Murray and Kliever. The seventeen counts against Murray are noted above. On May 16, 1983 defense counsel filed a motion to dismiss the charges against Murray on the grounds that the government had failed to comply with the Speedy Trial Act at both the pre-indictment and the post-indictment stages of this case. On June 9, 1983 Judge Price granted the motion and dismissed with prejudice Counts III, XV, and XVI against Murray. Prior to and following his dismissal, Murray's trial has been continued on numerous occasions.

## I. THE APPROPRIATE STANDARDS OF REVIEW

On April 6, 1982, Murray had yet to be indicted; his case had not been officially assigned to a District Judge in the Eastern District. Judge Crocker, the duty judge, heard the government's ex parte application for a sixty day continuance on a contingent basis; he was not familiar with the facts of the investigation beyond the representations made by the government. Judge Crocker granted the exclusion of time (hereinafter referred to as the "Crocker Exclusion") without the benefit of a complete factual record. The Crocker Exclusion of April 12 was implicitly conditioned on a complete review by the presiding judge assigned after Murray's indictment was filed.

Judge Price's Order of June 9, 1983 (hereinafter referred to as the "Price Order") purports to overturn the factual findings of the Crocker Exclusion relating to Counts III, XV, and XVI as against Murray. The government argues that, in so doing, Judge Price violated this Court's "clearly erroneous" standard for factual findings. *See, e.g., United States v. Pol-*

*lock,* 726 F.2d 1456, 1464 (9th Cir.1984). As we noted in *United States v. Nance,* 666 F.2d 353, 356 (9th Cir.1982), "on appellate review of a trial court ruling that the ends of justice exception [of Section 3161(h)(8) ] is grounds for continuance, we do not disturb [the] factual findings underlying the district court's determination unless they are clearly erroneous...." (citation omitted).

■ In the proceeding below, Judge Price was the *trial* judge; in the ordinary situation he need not comply with any standard of review when overseeing a referral from the duty judge. As *United States v. Murray, et al.* became his case for trial, it was permissible and proper for Judge Price to consider all of the facts surrounding the Murray investigation, arrest and indictment and to conduct a factual review in determining matters arising under the Speedy Trial Act. Yet, the ends of justice concept embedded within the Act is implicated when a second review of the time exclusions is conducted. As we have noted elsewhere, it "is important that the court and the parties know when the clock stops running under the Act. It is even more important that they know when it starts again." *United States v. Henderson,* 746 F.2d 619, 623 (9th Cir.1984).

■ An exclusion of time from speedy trial computations effectively stops the speedy trial clock. It is axiomatic that the government relies on the permanence of such an order in its preparation of an indictment and for trial. A subsequent factual review and reversal of an earlier ruling would wreak havoc on the government's schedule of prosecution. Further, the subsequent revocation of a lengthy continuance may effectively dismiss with prejudice the charges against the defendant. Consistent with the ends of justice purpose of the Speedy Trial Act, it is not fair to free a defendant simply because in a subsequent review of the facts another judge disagreed with the order which stopped the clock. *See United States v. Carlone,* 666 F.2d 1112, 1115–16 (7th Cir.1981).

■ Of course, when the government improperly procures an order excluding time under the Speedy Trial Act, it may suffer the sanction of retroactive revocation by the trial judge of the time extension previously granted. Yet, to avoid confusion and to prevent undue prejudice to the government and to the public, the factual findings of an ends of justice continuance should not be disturbed retroactively by the trial judge unless clearly erroneous.

■ Our review of the June 9, 1983 Price Order discloses not only an omission to find the prior order clearly erroneous, it is also devoid of all findings required to support the dismissal of Counts III, XV and XVI. The Price Order is, hence, clearly erroneous. *Nance, supra; United States v. Fielding,* 645 F.2d 719, 721–22 (9th Cir. 1981).

## II. THE PROPRIETY OF THE DISMISSAL

Under the Speedy Trial Act, 18 U.S.C. § 3161(b) (1984), an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested...." Certain periods of delay in filing an indictment may be excludable under 18 U.S.C. § 3161(h) (1984). If an indictment is not filed within thirty days, nor properly extended, the Speedy Trial Act mandates the dismissal of the charges against the individual, either with or without prejudice. 18 U.S.C. § 3162(a)(1) (1984).

Arrested on March 10, 1982, Murray, pursuant to Section 3161(b), was required, absent an extension of time, to be indicted by April 9, 1982. The government expediently sought such an extension of time under the provisions of Section 3161(h)(8). This section allows certain specified periods of delay to be "excluded in computing the time within which an information or an indictment must be filed...."

■ Judge Crocker in substance found that an extension of sixty days was necessary because of the ongoing nature of the

investigation into the weapons discovered at the home of Murray's daughter and into the munitions paraphernalia found at Murray's residence. This investigation proved fruitful; the government indicted another defendant, Kliever, and linked seven of the weapons discovered at the Watson home to Murray. On appeal, the government argues that Congress never intended the thirty day indictment time limit to force the return of two indictments and the holding of two trials in a situation such as here presented. When the government obtains evidence of criminal violations within thirty days of an arrest, and discovers additional facts suggesting the existence of other crimes, the government contends that judicial efficiency and prosecutorial economy mandates one trial based on one indictment. We agree. *Cf. United States v. Lovasco*, 431 U.S. 783, 793, 97 S.Ct. 2044, 2050, 52 L.Ed.2d 752 (1977). In cases of relative complexity, with multiple defendants and ongoing investigations such as here, it may be quite unreasonable to expect the preparation and return of an indictment within thirty days.

In the case at bar, efficiency and economy were definitely served by the sixty day extension. It would have been unreasonable to require the government to dovetail its earlier investigation into the circumstances surrounding the cache of weapons found at the Watson home. There was a compelling duty for the government to investigate the probable unlawfulness associated with the collection of semi-automatic and automatic weapons found at the Watson home. It appears that the government pursued its investigation with reasonable diligence, having to rely on serial number traces and forensic analyses which are, by their very nature, time-consuming. Also, the government's application for a time extension did track the terms of Section 3161(h)(8)(B)'s excludable delays. As the facts developed, this complex, ongoing investigation made proper and necessary the continuance beyond the thirty day period; the delay was reasonable based on the findings made by Judge Crocker. The findings were wholly

in accordance with the provisions of Section 3161(h)(8)(A).

The Price Order dismissed Counts III, XV, and XVI with prejudice. While Judge Price was at liberty to conduct a *de novo* review of the facts of the case and make findings contrary to those of Judge Crocker, he failed to do so. The Price Order fails even to discuss the factors required by Section 3161(h)(8)(B), nor does the Order make any specific findings as required by that section. Indeed, the basis for the dismissal of the three counts is facially unclear. We hold the order of dismissal to be clearly erroneous. Accordingly, we reverse the order of dismissal of Counts III, XV, and XVI and remand the case to the trial court for further appropriate proceedings.

REVERSED and REMANDED.