K. T. SMITH, J.S.C.
*417 Before the court is the State's motion for excludable time. The State's motion was filed by Assistant Prosecutor Michael Mellon of the Gloucester County Prosecutor's Office. Defendant Shawn Johnson was initially represented by Deputy Public Defender Richard O'Brien and later by pool counsel, Steven Zorowitz, who both responded to the motion in writing and through oral argument. Counsel for defendant Rumiejah Ukawabutu, Edward Crisonino, only argued the motion orally. The State also filed a supplemental brief in support of its motion. Oral argument was heard on September 18, 2017, and September 22, 2017. For the reasons stated below, the motion is GRANTED.
FACTUAL SUMMARY
The facts are limited to those pertinent to the motion for excludable time. The court notes that the facts are gleaned from the record alone. No counsel submitted a detailed recitation of the facts or procedural history.
On January 3, 2017, defendants Shawn Johnson and Rumiejah Ukawabutu allegedly committed a series of crimes, including kidnapping, robbery, attempted murder, and weapons offenses. The State asserts that the charged offenses occurred within Gloucester and Camden Counties.
Victim B.M. rented a warehouse in Westville, New Jersey for a private business. At approximately 8:30 p.m. on January 3, 2017, three black males, two armed with firearms, entered B.M.'s warehouse and proceeded to bind him with zip ties and strike his head and body with a gun. Victim A.L. arrived at the warehouse a short time later, apparently unaware of what was happening. Upon arrival, he too was bound with zip ties and was struck about his head and body with a rubber mallet. B.M. and A.L. knew one of the assailants, Johnson, and had previously planned to meet with him that evening to conduct a drug transaction. They had conducted drug transactions with Johnson in the past. Two of the assailants *418 wore masks while the third, Johnson, did not. The assailants demanded money and drugs.
During the incident, A.L. disclosed that he had $10,000 in his Cherry Hill, New Jersey home. The three suspects then removed A.L. (who was still zip-tied) from the warehouse, placed A.L. in his own car, got into the vehicle, and drove to A.L.'s home. B.M. was left behind. Upon arrival *135 at A.L.'s Cherry Hill home, the suspects were scared off due to A.L.'s family members and dogs. They proceeded to drop A.L. off in the rear of a closed business in the area.
A.L. was able to summon help and was ultimately transported to Cooper University Hospital in Camden, New Jersey. A.L. sustained a depressed skull fracture, a fractured scapula, and a fractured wrist. After receiving medical treatment, A.L. spoke with police and explained what happened. A.L. advised police that a cell phone found by police in A.L.'s car was not his. Police believed that the phone belonged to one of the suspects.
After speaking with A.L., the police eventually found B.M. He had a laceration on his head from being struck with a firearm and injuries to both wrists consistent with being restrained by zip ties. B.M. identified one of the suspects as Johnson. A.L. subsequently identified Johnson as well. Johnson was later arrested on January 20, 2017.
The Gloucester County Prosecutor's Office was subsequently granted a Communications Data Warrant for Johnson's telephone facility as well as the cell phone found in A.L.'s vehicle. The Gloucester County Prosecutor's Office performed a forensic extraction of the phone found in A.L.'s vehicle. After an analysis of the data extracted from that phone, the information derived from the phone led law enforcement to Ukawabutu as one of the assailants.
After further investigation, including analyzing text messages and emails, reviewing security camera footage, tracking firearm sales transactions, and communicating with the Atlantic County *419 Prosecutor's Office and a United States Postal Inspector, an arrest warrant was issued for Ukawabutu. Further, in light of the above referenced analysis, on February 6, 2017, the police obtained a search warrant to search a residence in Atlantic City, New Jersey believed to be connected with Ukawabutu. Ukawabutu was arrested on February 8, 2017.
These crimes took place in both Gloucester and Camden Counties. During the course of the investigation, evidence relating to these crimes was gathered through efforts of investigators and detectives from the prosecutor's offices in Gloucester, Camden, and Atlantic Counties. Further, evidence was gathered through law enforcement efforts in several municipalities within those counties, including but not limited to Deptford, Westville, Cherry Hill, and Atlantic City.
PROCEDURAL HISTORY
On January 25, 2017, Johnson was ordered detained pretrial. Ukawabutu was detained pretrial by order dated February 16, 2017.
A Gloucester County Grand Jury returned a true bill for Indictment Number 17-04-00232-I on April 12, 2017. Count One charges Johnson with Attempted Murder, *420 first degree, in violation of N.J.S.A. 2C:5-1/2C:11-3(a)(3). Count Two charges Johnson with Attempted Murder, first degree, in violation of N.J.S.A. 2C:5-1/2C:11-3(a)(3). Count Three charges Johnson with Robbery, first degree, in violation of N.J.S.A. 2C:15-1(a)(1). Count Four charges Johnson with Robbery, first degree, in violation of N.J.S.A. 2C:15-1(a)(1). Count Five charges Johnson with Kidnapping, first degree, in violation of N.J.S.A. 2C:13-1(b)(2). Count Six charges Johnson and Ukawabutu with Conspiracy to Commit Murder, first degree, in violation of N.J.S.A. 2C:5-2/2C:11-3(a)(1). Count Seven charges Ukawabutu with Attempted Murder, first degree, in violation of N.J.S.A. 2C:5-1/2C:11-3(a)(3). Count Eight charges Ukawabutu *136 with Attempted Murder, first degree, in violation of N.J.S.A. 2C:5-1/2C:11-3(a)(3). Count Nine charges Ukawabutu with Robbery, first degree, in violation of N.J.S.A. 2C:15-1(a)(1). Count Ten charges Ukawabutu with Robbery, first degree, in violation of N.J.S.A. 2C:15-1(a)(1). Count Eleven charges Ukawabutu with Kidnapping, first degree, in violation of N.J.S.A. 2C:13-1(b)(2). Count Twelve charges Ukawabutu with Unlawful Possession of a Weapon, third degree, in violation of N.J.S.A. 2C:39-5(b). Count Thirteen charges Ukawabutu with Possession of Weapons for Unlawful Purposes, third degree, in violation of N.J.S.A. 2C:39-4(a).
On June 9, 2017, an arraignment hearing was held for Johnson. Discovery was ordered to be complete by July 28, 2017.
By letter dated June 7, 2017, counsel for Ukawabutu requested an adjournment of the June 9, 2017, arraignment hearing due to his unavailability. On June 23, 2017, an arraignment hearing was held for Ukawabutu. Discovery was ordered to be complete by July 28, 2017. By order dated June 7, 2017, fifteen days were excluded from the speedy trial calculation due to defense counsel's unavailability and attributable to Ukawabutu, pursuant to N.J.S.A. 2A:162-22(b)(1)(d) and Rule 3:25-4(d)(2)(D).
On June 5, 2017, counsel for Ukawabutu filed a pretrial motion for a Wade/Henderson Hearing. The motion was scheduled for September 22, 2017. On June 23, 2017, the court entered an excludable time order due to the pretrial motion and excluded 110 days from June 5, 2017 to September 22, 2017, pursuant to N.J.S.A. 2A:162-22(b)(1)(c) and Rule 3:25-4(d)(2)(C). However, on August 11, 2017, counsel for Ukawabutu orally withdrew his Wade/Henderson motion.
Since this case was indicted, the State has received discovery requests from defendants dated May 18, 2017; June 9, 2017; June 15, 2017; July 16, 2017; July 18, 2017; and August 3, 2017. Further, the State has sent discovery to defendants on July 5, 2017; July 7, 2017; July 21, 2017; July 28, 2017; August 7, 2017; and August 9, 2017. According to the parties, there is still additional discovery outstanding. Of note, outstanding are over 700 pages of medical records regarding the alleged victims. The State claims it did not *421 receive the records from the medical providers and/or institutions until the first week of August 2017. The State asserts that these records require redaction of personal identifier information before they can be released. The State submits that though there have been people working on the redactions, it does not have the resources available to designate one individual to redacting the document, let alone several.
Next, the State asserts that it is awaiting the results of DNA analysis from the New Jersey State Police Forensics laboratory of a buccal swab of Johnson. The State took the swab September 14, 2017, at the Cumberland County jail. The State has indicated that it does not know how long it will take for the results to come back. The State concedes that it already took one buccal swab of Johnson in this matter on January 19, 2017, and has additional DNA records for Johnson preserved in CODIS. The State, however, acknowledges that the lab submission paperwork submitted with the January 19, 2017, buccal swab incorrectly labeled the case as a "non-bail reform" (i.e., pre-Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26) (hereinafter "CJRA") case. The result was that the buccal swab was not prioritized by the New Jersey State Police lab. The State notes that having uncovered the error, it has communicated with the lab the urgent need to prioritize submissions from this case.
*137 Finally, counsel for Johnson indicated that counsel has had difficulty accessing produced discovery on recorded disks, which has required ongoing efforts from the Prosecutor's Office to instruct counsel on accessing those files.
The court previously ordered on June 9, 2017, that all discovery be completed by July 28, 2017. This order was given prior to other discovery requests by Johnson. A Wade/Henderson notice of motion was filed by Ukawabutu on June 5, 2017, and began a period of excludable time which did not end until August 11, 2017. This excludable time has been credited to Ukawabutu but not Johnson. On August 11, 2017, the court also ordered the State to complete its discovery obligations by August 18, 2017, and to *422 submit a letter to the court if it could not meet that obligation. The State filed its initial brief for its motion for excludable time on August 15, 2017, in lieu of the requested letter.
On August 18, 2017, the court entered an order vacating its previous excludable time order entered on June 23, 2017, due to Ukawabutu's withdrawal of his Wade/Henderson Motion. The court neglected, however, to enter an appropriate order to address the time during which the motion was pending and thus excludable. This opinion will address that period as well.
On September 11, 2017, Deputy Public Defender Richard O'Brien, previous counsel for Johnson, was unable to appear in court due to a family medical emergency. The hearing was postponed until September 18, 2017. Counsel for Ukawabutu sought to postpone his client's appearance until September 18, 2017, so that the joined defendants could appear together, with counsel, to address their joint pretrial issues. He consented to a speedy trial exclusion and an order was entered on September 11, 2017, excluding time from that date until the next appearance on September 18, 2017. In the interim, the Public Defender's Office made the decision to appoint Johnson a pool attorney, current counsel Steven Zorowitz.
No motion for severance has been filed. While no trial date has yet been set, the defendants are presently joined for trial.
This motion by the State for excludable time followed.
LEGAL ANALYSIS
Three issues have been presented to the court as part of, or as a result of, the State's motion, each requiring application or interpretation of the CJRA: first, whether the case should be designated complex pursuant to N.J.S.A. 2A:162-22(b)(1)(g) and Rule 3:25-4(i)(7); second, whether any portion of time since indictment should be deemed excludable from speedy trial calculation due to extraordinary circumstances pursuant to N.J.S.A. 2A:162-22(b)(1)(f) and Rule 3:25-4(i)(6); and third and finally, whether *423 excludable time attributable to one defendant should be attributable to all defendants who are joined for trial, even over their objection or opposition.
As of the authoring of this opinion, only one published opinion has addressed the issue of excludable time under the CJRA. In State v. Forchion, 451 N.J. Super. 474, 168 A.3d 1222 (2017), the Appellate Division set forth the standards of review it must employ when reviewing a challenge to a trial court's order excluding time under the CJRA. The Forchion court held that three orders of exclusion related to three separate pretrial motions were properly entered. Forchion, 451 N.J. Super. at 482-83, 168 A.3d 1222. As did the Forchion court, a few preliminary thoughts regarding *138 the CJRA are appropriate.[1]
Eligible defendants detained before trial are subject to the speedy trial provisions of the CJRA. After detaining a defendant pursuant to the CJRA, the State has ninety days to indict the defendant, N.J.S.A. 2A:162-22(a)(1)(a), and 180 days after the indictment to try defendant, N.J.S.A. 2A:162-22(a)(2)(a). Both periods allow for excludable time not subject to the ninety day and 180 day threshold, respectively. N.J.S.A. 2A:162-22(a)(1), (2). See State v. Robinson, 229 N.J. 44, 56, 160 A.3d 1 (2017).
The CJRA provides in pertinent part:
An eligible defendant who has been indicted shall not remain detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, not counting excludable time for reasonable delays as set forth in subsection b. of the section, before commencement of the trial.
*424 [ N.J.S.A. 2A:162-22(a)(2)(a).]
Further, if the trial does not begin within 180 days, the defendant shall be released from detention unless the court finds exceptional circumstances exist warranting the continued detention of defendant. See N.J.S.A. 2A:162-22(a)(2)(a). See also R. 3:25-4(c)(1), (2).
"The CJRA identifies thirteen periods that 'shall be excluded' when computing the date by which trial must commence." Forchion, 451 N.J. Super. at 479, 168 A.3d 1222 (citing N.J.S.A. 2A:162-22(b)(1)(a)-(m) ). "These excludable periods are also set forth in Rule 3:25-4(i)." Ibid.
"In many respects, the text of the [CJRA] follows the federal Bail Reform Act of 1984, 18 U.S.C.A. §§ 3141 to 3156...." Robinson, 229 N.J. at 56, 160 A.3d 1. The Appellate Division in Forchion turned to "the analogous federal statute for guidance in interpreting the speedy trial provisions of the CJRA." Forchion, 451 N.J. Super. at 480, 168 A.3d 1222. Absent authority from our courts in interpreting the CJRA regarding speedy trial exclusion, it is appropriate for this court to seek guidance from federal caselaw for the issues presented here.
A. Complex Case Designation.
Complex case designation under CJRA permits excludable time from speedy trial computation. Pursuant to N.J.S.A. 2A:162-22(b)(1)(g), "[o]n motion of the prosecutor, the delay resulting when the court finds that the case is complex due to the number of defendants or the nature of the prosecution" is excludable. See also R. 3:25-4(i)(7). But, the court shall only grant the motion if "the prosecutor establishes that due to the complexity of the case it is unreasonable to expect adequate preparation for pretrial proceedings or the trial itself," and "the court finds that the interests of justice served by granting the delay outweigh the best interests of the public and the defendant in a speedy trial." R. 3:25-4(i)(7)(B). Further, complex designation should only be granted "when the case involves more than two defendants, novel *139 questions of fact or law, numerous witnesses who may be difficult *425 to locate or produce, or voluminous or complicated evidence." R. 3:25-4(i)(7)(C). Finally, granting the motion requires approval of the Criminal Presiding Judge. See R. 3:25-4(i)(7)(E). Upon granting the motion, the court shall specify the period of excludable time and set forth its findings on the record orally or in writing. See R. 3:25-4(i)(7)(D).
Under the federal Speedy Trial Act, a defendant must be tried within seventy days from the later of the filing of the indictment or the date defendant appeared before a judicial officer. See 18 U.S.C. § 3161(c)(1). However, there are periods of excludable time which are not included in the calculation of the seventy days within which trial must commence, including when a case is designated complex:
Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
[ 18 U.S.C. § 3161(h)(7)(B)(ii).]
The decision that the case is complex must be based on a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). But, "no continuance ... shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the ... Government." 18 U.S.C. § 3161(h)(7)(C).
A mere conclusory statement that a case is complex, without specific findings on the record, is insufficient under 18 U.S.C. § 3161(h)(7)(B)(ii). See United States v. Perez-Reveles, 715 F.2d 1348, 1352 (9th Cir. 1983). The length of excludable time for a complex case should be reasonably related to the actual needs of the case, and should not be used as a calendar control device or a means of circumventing the requirements of the federal Speedy Trial Act. See United States v. LoFranco, 818 F.2d 276, 277 (2d Cir. 1987). "The need for further preparation in a complex case and the likelihood that failure to grant a continuance would ...
*426 result in a 'miscarriage of justice' ... would justify an ends-of-justice continuance. 18 U.S.C. §§ 3161(h)(8)(B)(i),(ii)." United States v. Wiehoff, 748 F.2d 1158, 1160 (7th Cir. 1984).
In Perez-Reveles, the appellate court overturned the District Court's ruling that time was excludable due to the complexity of the case, because "[n]o complex or unusual issues were raised by the Government or the defense" and the District Court made no findings to support its ruling that the case was complex. Perez-Reveles, 715 F.2d at 1352-53. However, in United States v. Thomas, 774 F.2d 807 (7th Cir. 1985), the Seventh Circuit upheld the District Court's exclusion of time and designation of the case as complex because the record supported the District Court's specific findings of complexity, 18 U.S.C. § 3161(h)(7)(B)(ii), i.e., there were six defendants and thousands of pages of financial documents. See Thomas, 774 F.2d at 810. The Ninth Circuit Court of Appeals held that excludable time of ninety days was appropriate as the case was complex due to ongoing investigations in two other states, voluminous discovery, numerous counts, joint defendants, and witnesses from other countries. See United States v. Lewis, 611 F.3d 1172 (9th Cir. 2010). In United States v. Gordon, the District Court's finding that the case was complex did not violate the federal Speedy Trial Act as there was voluminous discovery, *140 including documents detailing hundreds of financial transactions and government's identifying hundreds of thousands of documents that needed to be catalogued and separated, so that parties could identify relevant ones. See United States v. Gordon, 710 F.3d 1124 (10th Cir. 2013). See also United States v. Astra Motor Cars, 352 F.Supp.2d 367 (E.D.N.Y. 2005) (holding case was properly designated complex due to the volume of discovery involved with a multi-jurisdictional motor-vehicle theft ring with thousands of documents); United States v. Murray, 771 F.2d 1324, 1328 (9th Cir. 1985) (holding case complex, and thus the sixty day extension the District Court granted to indict defendant was justified, due to the potential multiplicity of defendants, cache of semi-automatic and automatic guns, and that the government pursued its investigation with reasonable diligence, having to rely *427 on serial number traces and forensic analyses, which are time-consuming by their nature).[2]
What is clear from the federal jurisprudence is that designation of a case as complex requires a fact-specific determination unique to the case at bar. Equally clear is that the court must make sufficient findings of fact to support its ruling and must, if granted, extend the case through speedy trial exclusions to a degree only necessary to address that complexity.
Here, the case warrants complex case designation. There are several facts that collectively make the case complex.
This is a multi-county, multi-jurisdictional investigation requiring coordination between various police departments and three county prosecutors' offices. This case spans Gloucester, Camden, and Atlantic Counties, which is not unheard of for the Gloucester County Prosecutor's Office, but nonetheless is an atypical case. Further, the discovery comes from various jurisdictions within each county that are not centrally located at one source. Rather, the State must deal with each individual police department and each individual prosecutor's office to gather its respective evidence. By way of example, the State submits that while writing its supplemental brief on September 20, 2017, the State discovered that the Cherry Hill Police Department had body cameras with footage relevant to their investigation. That this discovery came nine months after the alleged crimes took place underscores this point. Further, the Cherry Hill Police Department is an out-of-county *428 agency in Camden County whose policies, practices, and procedures would be less familiar to the Gloucester County Prosecutor's Office.
Johnson argues that since the State estimates two days for the presentation of its case at trial as stated in the Pre-Trial Memorandum (not yet filed), this suggests the case cannot be complex. While the court is dubious regarding this estimate, the amount of time a trial is projected to last does not, per se, indicate that the substance of what is being presented in those two days is not complex. Certainly, trials take diligent preparation; presenting *141 a coherent case may take significantly more than two days to prepare, particularly if the case involves sifting through voluminous evidence and coordinating with police departments across the region, as is the case here. The State's investigation of this or any other case may generate or uncover a multitude of evidence, but only a small fraction is either admissible or relevant to the State's ultimate presentation to the jury. The State is often criticized at trial for not turning over every stone in its investigation, but when it does look under a rock for clues, it must document its efforts and findings and disclose that in discovery.
The State further argues that it must redact approximately 700 pages of medical records of the victims and thereafter disclose those redacted records. Redacting such a large amount of pages is laborious and time consuming, but necessary. While Johnson argues that some records have already been disclosed which contain personal identifier information (herein "PII") of one or more of the victims, that does not absolve the State from fulfilling its obligation to protect the victims from unnecessary disclosure of PII. To compound the difficulty, the State submits that due to delays by the medical providers and/or institutions, the State did not receive said records until early August. These records are not initially under the State's control or possession and therefore it must rely upon these providers and/or institutions to produce them. The State's discovery request or demand to these providers and/or institutions does not obligate them to drop everything and *429 comply forthwith. Absent court intervention or order, disclosure is not likely to be speedy. Redaction efforts can only begin once those records are received.
Regardless of Johnson's claim that medical records are not admissible evidence, which does not mean such records cannot contribute to making a case complex, the records must be disclosed as the foundational records supporting an expert's opinion. Johnson asserts that the State's expert, presumably an emergency room physician or specialist, would have to testify regarding the nature and extent of the injuries sustained by the victims. As we know, however, such records are discoverable under Rule 3:13-3. As discussed above, the records still need redaction regardless of admissibility.
The outstanding DNA analysis also adds to the complexity here. As the court acknowledged in United States v. Murray, "forensic analyses ..., by their very nature, [are] time-consuming." 771 F.2d at 1328. Thus, notwithstanding the issue of mislabeling the January 19, 2017, buccal swab of Johnson, even if the State acted as diligently as possible in delivering the swab to the State Police forensics lab, it would still take time to get processed. Such is the nature of forensic testing. The unavoidable delay associated with such processing, testing, and analyzing contributes to the complexity of this case. The State's mislabeling, while inexcusable, appears in no way to be malicious. It represents that it has communicated with the State Police lab that the evidence submitted must be prioritized.
With that said, the amount of time that it took the State to request a second buccal swab is a separate point. When it learned of the mislabeling error and how quickly it moved to rectify the problem is not clear. Knowing that this case and these issues occurred within the first three weeks of the implementation of the CJRA gives greater insight into how the error could have occurred, but does not excuse the State's errors. Yet, due to the *430 *142 unavoidable waiting time for forensic testing results, this adds to the complexity of the case.[3]
Johnson's claim that the case is not complex because Detective Rivell stated that this case is a common drug transaction during his grand jury testimony is without merit. Certainly, detectives play an important role in a criminal investigation and prosecution. However, prosecutors, not detectives, prepare for trial and presentation to a petit jury. As prosecutors prepare for trial, issues inevitably arise that make the case more complicated that were not contemplated prior to the indictment. Further, this case involves attempted murder, robbery, kidnapping and weapons charges with two defendants and multiple jurisdictions. The context of the question and answer are not particularly clear. Thus, Detective Rivell's labeling the case as a common crime to occur between drug dealers appears to be a bit off-the-cuff and not an accurate characterization of this case.
Last, the court notes that any mention of a potential on-going investigation for other crimes involving the defendants in this matter is not pertinent to the determination of this motion. The facts known to the court suggest that a third actor may have been involved with Johnson and Ukawabutu. It is likely that the State continues to investigate the matter with the hopes of identifying and charging such person. If some other investigation is underway regarding one or both of the defendants charged here, it is unknown to the court and not pertinent to the motion before the court.
A note of caution at this juncture is, however, appropriate. While the parties and this court have turned to federal jurisprudence *431 for guidance in considering the State's motion to designate this case complex under the CJRA, specifically N.J.S.A. 2A:162-22(b)(1)(g), we are reminded that we are not in federal court. The cited cases contain factual scenarios which would be rare in state court. Hence, a determination under N.J.S.A. 2A:162-22(b)(1)(g) that a case is complex is a case-by-case, fact and circumstances specific analysis in light of the state charges before a state court.
Upon the State's motion, the court finds that the case is a complex case, with the State having established that due to the complexity of the case it is unreasonable to expect adequate preparation for pretrial proceedings or the trial itself within the standard time periods. The case involves two charged defendants and two alleged victims. Investigation and prosecution of this case requires the collection of evidence and coordination of agencies from three counties and multiple municipalities. Voluminous documentary evidence requires review and redaction before disclosure. Some evidence requires forensic analysis that the prosecuting authority is unable to perform themselves, chiefly serological and DNA examination and testing. Finally, the charges themselves contribute to the complexity with the defendants facing attempted murder charges as to each victim, kidnapping charges, robbery, and weapons offenses. The court further finds that the interests of justice served by granting the delay outweigh the best interests of the public and the defendants in a speedy trial. The court finds that a period of sixty (60)
*143 days excludable under the CJRA due to the complexity of the case properly balances these interests. The period of sixty (60) days will commence upon approval of the Criminal Presiding Judge as is required under Rule 3:25-4(i)(7)(E).
B. Exceptional Circumstances Warranting Exclusion.
Exceptional circumstances are also an excludable period under the CJRA. See N.J.S.A. 2A:162-22(b)(1)(f) and R. 3:25-4(i)(6). Exceptional circumstances include, but are not limited to:
*432 [A] natural disaster, the unavoidable unavailability of an eligible defendant, material witness or other evidence, when there is a reasonable expectation that the eligible defendant, witness or evidence will become available in the near future.
[ Ibid. ]
Subsection 3161(h)(7)(A) of the federal Speedy Trial Act provides for exclusions "if the judge granted such continuances on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C.§ 3161(h)(7)(A).
The issue here is that Johnson was without representation for a period of time. Johnson's first attorney, Assistant Deputy Public Defender Richard O'Brien, had a family health emergency that took him away from his court responsibilities for several weeks. During this time, the State's motion for excludable time was pending but went unaddressed due to O'Brien's understandable unavailability. O'Brien was unable to attend argument for the present motion on September 11, 2017. The court postponed the argument for September 18, 2017. In the interim, the Public Defender's Office made the decision to take O'Brien off the case and assign Johnson pool counsel, his present attorney Steven Zorowitz. As such, the court finds that the eight (8) days between September 11, 2017, and September 18, 2017, qualify as excludable time as an exceptional circumstance. By September 18, Zorowitz was assigned, and in fact appeared on behalf of Johnson when the motion was first argued. Certainly, a family health emergency is an exceptional circumstance in its own right. Moreover, during that week (September 11-18), Johnson was without counsel from whom to seek legal advice nor advocate on his behalf. The State was also without opposing counsel with whom to confer. Thus, the time period between September 11, 2017, and September 18, 2017, is excludable time, as this court finds that the absence of counsel representing the defendant's interests is extraordinary. This time period is likely longer given the unavailability of O'Brien, and thus, his unavailability to Johnson and the court.
*433 C. Excludable Time as to Defendants Joined for Trial.
The federal Speedy Trial Act provides that "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" shall be excluded when computing the time within which a trial must commence. 18 U.S.C. § 3161(h)(6). The CJRA does not address directly these periods of time where defendants are joined for trial, but rather addresses excludable time where severance has been granted. See N.J.S.A. 2A:162-22(b)(1)(h) and R. 3:25-4(i)(8). Again, this court turns to federal jurisprudence for guidance.
The first federal circuit court to consider this provision of the federal Speedy Trial Act was the D.C. Circuit in 1980, which *144 concluded that "[t]he exclusion under 18 U.S.C. § 3161(h)(7) is crucial in a case involving multiple defendants because it provides that an exclusion applicable to one defendant applies to all codefendants." United States v. Edwards, 627 F.2d 460, 461 (D.C. Cir. 1980).[4] The Third Circuit likewise held that "after defendants are joined for trial, 'an exclusion applicable to one defendant applies to all codefendants.' " United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993) (quoting United States v. Novak, 715 F.2d 810, 815 (3d Cir. 1983), abrogated on other grounds by, United States v. Felton, 811 F.2d 190 (3d Cir. 1987) ). "Every circuit court that has considered the construction of this section has concluded that 'an exclusion to one defendant applies to all codefendants.' " United States v. Butz, 982 F.2d 1378, 1381 (9th Cir. 1993) (quoting Edwards, 627 F.2d at 461 ) (rejecting the argument of defendant that because he did not move for a continuance, one granted to several codefendants should not toll his speedy trial time). See also United States v. Holyfield, 802 F.2d 846, 848 (6th Cir. 1986) ; United States v. Rush, 738 F.2d 497, 504 (1st Cir. 1984) ; *434 United States v. Campbell, 706 F.2d 1138, 1141 (11th Cir. 1983) ; United States v. Fogarty, 692 F.2d 542, 546 (8th Cir. 1982).
The Third Circuit Court of Appeals reviewed the legislative history behind the implementation of the provision for joint exclusion for joined defendants.
We believe that section 3161(h)(7) represents a congressional effort to build into the Speedy Trial Act sufficient flexibility to allow the government to stop criminal activity by arresting the suspected perpetrators as soon as it has probable cause, without precluding a joint trial with compatriots who may be apprehended at a later date. We believe that it is consistent with this congressional intent to apply section 3161(h)(7) so that, after defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants," Edwards, supra, 627 F.2d at 461, subject to the reasonableness constraint.
[ United States v. Novak, 715 F.2d 810, 815 (3d Cir. 1983).]
The same concepts of allowing sufficient flexibility to law enforcement in stopping criminal activity and encouraging judicial economy via a single trial for joined defendants as considered by Congress over 30 years ago are consistent with our State's jurisprudence today.
Rule 3:7-7 allows for joinder of defendants who are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. This Court has stated that in such cases, where much of the same evidence is needed to prosecute each defendant, a joint trial is preferable. Joint trials foster an efficient judicial system and spare witnesses and victims the inconvenience and trauma of testifying about the same events two or more times. In addition, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. They also allow for a more accurate assessment of relative culpability--[an] advantage[ ] [that] sometimes operate[s] to the defendant's benefit.
However, the interest in judicial economy cannot override a defendant's right to a fair trial. Rule 3:15-2(b) thus provides *145 for relief from a prejudicial joinder.
[ State v. Sanchez, 143 N.J. 273, 281-82, 670 A.2d 535 (1996) (internal citations and quotation marks omitted).]
No motion for severance has been made nor has severance of these defendants been ordered. Johnson and Ukawabutu are presently joined for trial. Accordingly, any period of exclusion is properly attributable to both defendants.
Attached hereto is a schedule for post-indictment speedy trial exclusions that will be attributable to each of defendants Johnson *435 and Ukawabutu. Where necessary, speedy trial orders will be entered to correct prior orders that may have attributed excludable time to only one defendant.
CONCLUSION
In consideration of the above, the State's motion for excludable time, by designation of the case as complex, is GRANTED, WITH APPROVAL OF THE CRIMINAL PRESIDING JUDGE OF VICINAGE XV. A period of sixty (60) days will be ordered to address the case complexity found by the court.
Further, a period of eight (8) days will be excluded from speedy trial computation due to the extraordinary circumstances of former counsel for Defendant Johnson's unavailability.
Finally, all post-indictment periods of exclusion are attributable to each defendant since Defendants Johnson and Ukawabutu are joined for trial.
Attachment
Complex Case Designation pursuant to N.J.S.A. 2A:162-22(b)(1)(g) and R. 3:25-4(i)(7).
X- Approved
?- Disapproved
Dated: October 3, 2017
HONORABLE LINDA LAWHUN
Presiding Judge
Criminal Division
Vicinage XV
*436 *146 ?

The Robinson Court did not deal directly with the issue of speedy trial. The Court's chief focus was deciding the issue of discovery necessary in the context of detention hearings. See State v. Robinson, 229 N.J. 44, 160 A.3d 1 (2017). Very helpful to the lower courts, however, Chief Justice Rabner outlined the CJRA and provided helpful insights, chiefly the use of federal caselaw in interpreting the CJRA until a body of jurisprudence is developed in state court. Likewise, the Supreme Court's recent decision in State v. Ingram, 230 N.J. 190, 165 A.3d 797 (2017), was not a speedy trial case but rather addressed the pretrial detention issue of the State's right to proceed by proffer rather than live witness testimony to establish probable cause and its grounds for detention.

Counsel for Johnson cited to several federal decisions that were not published. He appended copies of two such decisions to his responding papers consistent with Rule 1:36-3. One involved a drug related murder that required the extensive process of presenting the case to the Capital Case Unit of the U.S. Department of Justice for its determination, with consent of the Attorney General of the United States, whether or not to seek the death penalty. A second involved a multi-defendant drug trafficking investigation involving court-authorized wiretaps of seven cellular telephones over a six-month period. Both cases were designated complex. These cases are unpublished and are not precedential. They are, nonetheless, instructive. Counsel discussed a third case, but did not include with his responsive papers a copy of the unpublished decision.

In cases where evidence is submitted to the New Jersey State Police forensic lab for serology testing and, if body fluids are suspected and found, and DNA testing thereafter, if a DNA profile is discovered it may be compared to the CODIS database. Even if a known suspect's DNA profile is in CODIS, the forensic lab requires a fresh control sample from that suspect to make a comparison and, if appropriate, confirmatory finding and render an opinion. This in and of itself is a complex process.

18 U.S.C. § 3161(h)(7) was subsequently amended causing renumbering in its current form, 18 U.S.C. § 3161(h)(6).